```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JALAL KHAN,                         :
                                    :
        Plaintiffs,                 :
                                    :      19-cv-9597(JSR)
        -v-                         :
                                    :      MEMORANDUM ORDER
EMERALD OPERATING PARTNERS, LLC,    :
et al.                              :
                                    :
        Defendants.                 :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Defendant Oliver Lawrence Quinn moves under Fed. R. Civ. P. 12(b)(2) to dismiss plaintiff Jalal Khan's claim against him for lack of personal jurisdiction. For the following reasons, the motion is granted.

Khan brings this action against Emerald Operating Partners, LLC ("Emerald"); Quinn; and two other individuals — Julien Samson and Trevor Bailey — whom Khan has yet to serve. Khan, Quinn, Samson, and Bailey jointly formed Emerald, a consulting business, on July 6, 2017. Compl. ¶ 12. Pursuant to a verbal agreement, Khan was admitted as a 24% member of Emerald on that same day.[1] Id. ¶ 13. The parties later formalized this arrangement in a written operating agreement that became effective on July 12, 2018. Id. ¶ 14.

---

[1] Khan's counsel has represented to the Court that the 2017 agreement was a verbal contract.

1

Emerald employed Khan as a "strategy expert" from June 2017 through December 2018. Id. ¶ 21. According to the complaint, Khan's efforts on Emerald's behalf "resulted in the retention of at least two large clients," thereby increasing Emerald's value by at least $800,000. Id. ¶¶ 22-23. Khan, a citizen of New York with experience in the New York City financial industry, was also recruited by Emerald to help the company build a base of private equity clients there. Notice of Removal ¶ 2; Khan Aff. ¶ 3. As further described below, Khan and defendant Quinn invested considerable time in the summer and fall of 2017 in an effort to expand Emerald's business into New York City. However, this effort was seemingly unsuccessful.

On December 28, 2018, Quinn, Samson, and Bailey allegedly terminated Khan's employment at Emerald and revoked his membership interest. Compl. ¶¶ 27-28. For the authority to do so, they invoked section 7.7(f) of the July 2018 operating agreement, which allowed Emerald's members to require another member's withdrawal from the company for failure "to perform services or meet performance milestones." Id. ¶¶ 27-28. Khan now alleges that his termination was illegitimate under the operating agreement and that he is therefore owed unpaid salary and dividends from Emerald. Id. ¶¶ 30-34. In this suit, he brings causes of action for breach of contract, id. ¶¶ 37-45; 51-57, breach of fiduciary duty, id. ¶¶ 46-50; and unjust

2

enrichment, id. ¶¶ 58-66; he also seeks a declaratory judgment that he is still a 24% member of Emerald, id. ¶¶ 67-68.

As relevant to Quinn's instant motion to dismiss, Khan performed the majority of his work for Emerald in New York, Khan Aff. ¶ 28, but Quinn's contacts with New York were more modest. During the relevant period of time, Quinn lived in Chattanooga, Tennessee. Quinn Decl. ¶ 3. Other than the concededly-repeated contacts with New York described below, he performed his Emerald-related work either in Chattanooga; Richmond, Virginia (where defendant Julien Samson lives and works); or at client locations, none of which were in New York. Id. ¶ 13. Similarly, Samson lived and generally worked in Richmond, Virginia, and defendant Trevor Bailey lived and typically worked in England. Id. ¶¶ 26-27. Emerald itself had no employees in New York other than Khan.[2]

Khan argues that a provision of New York's long arm statute, C.P.L.R. § 302(a)(1) nevertheless grants this Court personal jurisdiction over Quinn. Khan bears the burden to demonstrate that the Court has personal jurisdiction over Quinn, Das v. Rio Tinto PLC, 332 F. Supp. 3d 786, 799 (S.D.N.Y. 2018), but as this is a pre-discovery motion, Khan need only make a "prima facie showing of jurisdiction." Id. (quoting Jazini v.

---

[2] The Emerald LLC, however, is not contesting this Court's personal jurisdiction.

Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998)). In evaluating whether the Khan has done so, the Court assumes that Khan's factual allegations are true. Ralph Lauren Corp. v. CSR Group, Inc., 16-cv-3387 (RJS), 2016 WL 4919961 at *2 (S.D.N.Y. Sept. 14, 2016).

C.P.L.R. § 302(a)(1) provides federal courts sitting in New York with personal jurisdiction over a non-domiciliary defendant who "transacts any business within the state," where the "cause of action aris[es] from" such transactions. This, as the language implies, is a two-prong test. The first prong — the requirement that the defendant have transacted business in New York — means that the defendant must have "purposefully avail[ed] [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." DirecTV Latin Am., LLC v. Park 610, LLC, 691 F. Supp. 2d 405, 417 (S.D.N.Y. 2010) (second and third alterations in original) (quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)). The second prong — the requirement that the cause of action "arise from" the defendant's business transactions in New York — means that there must be "some articulable nexus between the business transacted and the cause of action sued upon." Ross v. UKI Ltd., 02-cv-9297 (WHP), 2004 WL 384885 at *4 (S.D.N.Y. Mar. 1, 2004) (quoting McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981)).

The first prong of the personal jurisdiction test is here satisfied. Quinn had repeated contacts with this state, which together amount to "transacting business" in New York. The facts alleged by Khan, which Quinn largely does not dispute, strongly suggest that the two were engaged in a concerted effort in the summer and fall of 2017 to build a client base for Emerald in New York City. First, Quinn used his personal credit card to rent Emerald a "virtual office" on Avenue of the Americas in Manhattan. Khan Aff. ¶ 4; Quinn Decl. ¶ 11. This arrangement provided a phone answering and mail forwarding service, as well as limited use of a conference room, at which Quinn attended four meetings with clients and prospective clients in 2017 and 2018. Quinn Decl. ¶¶ 11, 15-18; Khan Aff. ¶ 5. The virtual office contract also allowed Emerald to use the building's Manhattan address on its marketing materials; and indeed, during Khan's employment with Emerald, the company used the Avenue of the Americas address on its marketing materials, website, business cards, letterhead, pitch books, and contracts, and it directed clients to mail payments to that address. Khan Aff. ¶¶ 6-12.

In addition to the meetings in the Avenue of the Americas conference room, Quinn also attended many other meetings in New York City during the summer and fall of 2017. In July 2017, Quinn traveled to New York to meet Khan for a three-day strategy

session about Emerald. Id. ¶ 3. Over the remainder of that year, Quinn attended approximately ten to twenty meetings with prospective clients at their offices in New York, though none of these meetings actually generated any business. Quinn Decl. ¶ 19; Khan Aff. ¶ 13-23. During a several-month period in 2017, Quinn was coming to New York roughly once every two weeks to attend meetings. Khan Aff. ¶ 14.

These contacts amount to transacting business in New York for the purposes of C.P.L.R. § 302(a)(1). Although Quinn's efforts to expand Emerald's client base into New York city were ultimately unsuccessful, and although his 2017 meetings with prospective clients did not initiate any "transaction" in the most formal sense, his prolonged, repeated, deliberate attempts to build a business in New York are more than enough to demonstrate "purposeful availment" of the protections of New York law. See Gucci Am. v. Weixing Li, 135 F. Supp. 3d 87, 97 (S.D.N.Y. 2015) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 171 (2d Cir. 2013)) (holding that "in-forum conduct [that] is deliberate and recurring, not 'random, isolated, or fortuitous" satisfies the first prong of C.P.L.R. § 302(a)(1). Indeed, the facts of this case resemble those of El Cid, Ltd. v. New Jersey Zinc Co., 444 F. Supp. 845, 849 (S.D.N.Y. 1977), where a court in this district held that two out-of-state defendants had subjected themselves to personal

6

jurisdiction in New York by "participating in at least ten meetings in New York," which meetings "were undertaken to promote . . . business ventures."[3]

On the second prong of the personal jurisdiction test, however, Khan is on weaker ground. Quinn's business transactions in New York are not alone sufficient to grant this Court personal jurisdiction; there must also be "some articulable nexus" between those transactions and Khan's cause of action. Ross, 2004 WL 384885 at *4. Khan alleges that Quinn breached the operating agreement (as well as the fiduciary duties flowing from that agreement) by voting to terminate Khan's interest in Emerald in December 2018. But Khan does not make a prima facie showing of a nexus between his causes of action and Quinn's contacts with New York a year or more earlier.

---

[3] Quinn responds to these arguments by noting that the virtual office was not a permanent address and that Quinn's meetings in New York did not succeed in generating business there. He relies on Bakken Resources, Inc. v. Edington, 15-cv-8686 (ALC), 2019 WL 1437273, at *5 (S.D.N.Y. Mar. 29, 2019), in which a court in this district recently held that an out-of-state defendant who accompanied Bakken's CEO to a single meeting in New York to promote Bakken's stock was not subject to personal jurisdiction in the state. But Quinn's contacts with New York are far more extensive than those of the defendant in Bakken. Quinn did not attend a mere one meeting; he was engaged in an extended campaign over several months to build up his business in New York, a campaign that resulted in several contacts with the state. That he had no permanent office in the state, and that his efforts were ultimately unsuccessful, therefore do not alter the Court's analysis.

7

The main issue is one of timing: Quinn and Khan's meetings with prospective clients in New York City occurred in 2017, and their efforts to build a client base there appear to have waned after then. See Khan Aff. ¶¶ 16-21. Although Quinn attended three meetings at the Avenue of the Americas conference room in 2018, at least two of those meetings were with existing Emerald clients that were not based in New York. Quinn Decl. ¶¶ 17-18; Khan Aff. ¶ 23. And on July 1, 2018, Emerald downgraded its virtual office contract such that the company would only receive as-needed use of the conference room, rather than a regular allotment of time. Quinn Decl. ¶ 12. While Khan continued working from New York until he was terminated in December 2018, and while the company continued using the Manhattan address on its marketing materials, Khan Aff. ¶¶ 6-7, 28, the Court infers from all of these facts that by 2018, Quinn and Emerald had abandoned their ambition of expanding their business into New York City.

This chronology is significant because the parties entered into a written operating agreement for Emerald — i.e., the contract that forms the basis of Khan's breach claims against Quinn — on July 12, 2018. Compl. ¶ 14. Virtually all of Quinn's Emerald-related contacts with New York, save one or two meetings in the virtual office conference room, occurred before the parties entered into the operating agreement. See Quinn Decl. ¶¶

17-18; Compl. ¶ 14. It is thus difficult to see a nexus between the alleged breach of this contract in December 2018, Compl. ¶¶ 27-28, and Quinn's contacts with New York, which almost entirely predate the existence of the contract, let alone its alleged breach.[4]

Khan attempts to demonstrate the requisite nexus by arguing that he continued performing work on behalf of Emerald in New York until the time he was fired, but it is well-settled that a plaintiff's actions in the forum state do not create personal jurisdiction over a defendant. See Int'l Customs Assocs. v. Ford Motor Co., 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995). Alternatively, Khan's allegations could also be read to imply that Quinn's few remaining contacts with New York — e.g., using a prestigious address on marketing materials, using a Manhattan conference room as a convenient place to meet clients — may have

---

[4] But even if the Court were to assume something that Khan does not specifically allege — that the oral agreement by which the parties formed Emerald in July 2017 had substantially the same terms as the written 2018 agreement, and that a breach of the latter would also have been a breach of the former — any nexus between Quinn's contacts with New York and Khan's causes of action would still be tenuous at best. After Quinn and Khan apparently stopped meeting with prospective clients in New York in late 2017, Khan continued working for Emerald for another year before Quinn, Samson, and Bailey voted to terminate him. Khan does not allege that his purportedly illegitimate firing had anything to do with the unsuccessful push in 2017 to recruit New York-based clients, and the substantial amount of intervening time leads the Court to doubt that those events were directly related.

9

increased the enterprise value of Emerald, some of which the defendants are alleged to have unjustly withheld from Khan. See Compl. ¶¶ 22-23; Khan Aff. ¶¶ 6-12, 16, 23, 26-27. These facts, while potentially relevant, are not sufficient to demonstrate a nexus between Quinn's contacts with New York and Khan's causes of actions because they ultimately speak to damages, rather than Quinn's liability in the first instance.

Thus, the Court concludes that Khan has not made a prima facie case that "some articulable nexus" exists between Quinn's contacts with New York and Khan's legal claims. Quinn's motion under Fed. R. Civ. P. 12(b)(2) to dismiss all counts against him for lack of personal jurisdiction is hereby granted.

SO ORDERED.

Dated: New York, NY
December 27, 2019

JED S. RAKOFF, U.S.D.J.